**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **CHRISTOPHER RAWLINGS, on behalf of himself and others similarly situated,** | ) | Case No. 2:20-cv-02289 |
| | ) | |
| Plaintiff, | ) | Judge Sarah D. Morrison |
| | ) | |
| v. | ) | Magistrate Judge Kimberly A. Jolson |
| | ) | |
| | ) | **JOINT MOTION FOR PRELIMINARY** |
| **BMW FINANCIAL SERVICES NA, LLC,** | ) | **APPROVAL OF CLASS ACTION** |
| | ) | **SETTLEMENT** |
| Defendant. | ) | |

## I.  INTRODUCTION

Plaintiff Christopher Rawlings ("Representative Plaintiff"), on behalf of himself and the members of proposed settlement class, and BMW Financial Services NA, LLC ("Defendant"), respectfully move this Court to preliminarily approve the Class Action Settlement Agreement ("Agreement" or "Settlement") between Representative Plaintiff and Defendant pursuant to Fed. R. Civ. P. 23(e).

In support of this Motion, Representative Plaintiff and Defendant submit the following exhibits:

**Exhibit 1:**    Class Action Settlement Agreement and Release and exhibits.

**Exhibit 2:**    Declarations of Matthew Coffman and Daniel I. Bryant.

**Exhibit 3:**    Notice of Class Action Settlement

**Exhibit 4**:    Proposed Preliminary Order Approving Class Action Settlement Agreement.

1

Representative Plaintiff and Defendant respectfully request that the Court enter the Proposed Preliminary Order Approving Class Action Settlement Agreement attached as **Exhibit 4** and:

- Certify the following class under Rule 23: "All nonexempt associates at BMW Financial Services' office in Hilliard, Ohio during the period of May 5, 2018 to May 21, 2021, who were required to boot up their computers, log into Citrix and have the toolbar open prior to the scheduled start of their shifts and who worked 40 or more hours in one or more workweeks (the "Class Members")";

- Preliminarily approve the Settlement pursuant to Fed. R. Civ. P. 23;

- Designate Representative Plaintiff as the Class Representative;

- Preliminarily approve the service payment to Representative Plaintiff;

- Designate Matthew J.P. Coffman of Coffman Legal, LLC and Daniel I. Bryant of Bryant Legal, LLC as Class Counsel;

- Preliminarily approve Class Counsel's request for attorneys' fees and litigation expenses; and

- Schedule a Fairness Hearing approximately 120 days after preliminary approval.

## II. FACTS

### A. Background.

On May 5, 2020, Representative Plaintiff filed this case, *Rawlings v. BMW Financial Services NA, LLC*, Case No. 2:20-cv-2289, in the United States District Court for the Southern District of Ohio, Eastern Division (the "Action"). In the Action, Representative Plaintiff brings claims against Defendant on behalf of himself and others similarly situated under the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §§ 201-219, the Ohio Minimum Fair Wage Standards Act "(OMFWSA"), O.R.C. §§ 4111.01, 4111.03, and 4111.10, and the Ohio Prompt Pay Act ("OPPA"), O.R.C. § 4113.15.

In particular, Representative Plaintiff alleged that he and other similarly situated hourly, non-exempt employees who worked at Defendant's Hilliard, Ohio facility were not paid for all hours worked starting with logging in to Defendant's computer systems, time tracking system, and numerous virtual software applications/programs through "Citrix." For background, Defendant offers a broad variety of products tailored for BMW, MINI and Rolls Royce customers. To provide these services, workers in a number of different positions engage with customers and outside vendors primarily via Defendant's telephone system (hereinafter "Associates"). Representative Plaintiff alleged that Defendant did not consider the time required of him and other Associates to start up, boot up, and log in to its computer systems as compensable time. Representative Plaintiff alleged that this time spent on the computer prior to being counted as "clocked in" was compensable because it is a principal activity and constitutes work. During workweeks when he and others worked forty (40) or more hours, Representative Plaintiff alleged they are owed unpaid overtime compensation as a result of the "boot up" time.

Defendant denied and continues to deny the claims asserted in the Action.

Although there was disagreement and briefing on the issue, the Parties ultimately stipulated to and the Court granted conditional certification of an FLSA collective action for the following individuals: "All nonexempt associates at BMW Financial Services' office in Hilliard, Ohio during the period of June 29, 2017 to present, who were required to boot up their computers, log into Citrix and have the toolbar open prior to the scheduled start of their shifts and who worked 40 or more hours in one or more workweeks." In the Action, a total of approximately 130 individuals ("Opt-In Plaintiffs") opted in to this lawsuit between Named Plaintiff's initial efforts and the formal notice process.

Thereafter, a meeting was held between Counsel for the Parties, who then proposed a case management schedule. As part of the case management schedule, Defendant was to produce the payroll and time records for the Putative Class Members, which includes the 130 Opt-In Plaintiffs and the remaining Rule 23 putative class members (consisting of those who did not opt in, including Associates compensated by Defendant and Associates assigned to Defendant's Hilliard, Ohio office by staffing agencies). The total class size (regardless of whether the individual opted in or not) is thus comprised of 1,293 Associates. To avoid the burden, expense, risks and uncertainty of litigation, the Parties agreed to engage in early settlement discussions. Class Counsel engaged the services of a MA economist to construct a damages model using relevant pay and time records produced by Defendant and the staffing agencies.

The Parties scheduled a mediation on November 23, 2021 before Michael N. Ungar, of Ulmer & Berne LLP, which took the entire day. However, the Parties were unable to reach an agreement. Over the course of the next two months, the Parties continued to exchange their respective positions. The Parties, through their diligent and good faith negotiations, were able to resolve the Action on or about January 17, 2022 through a Memorandum of Agreement. The terms of that agreement were thereafter incorporated in the Class Action Settlement Agreement and Release that is currently presented to this Court for preliminary approval in the attached **Exhibit 1**. The total class size (regardless of whether the individual opted in or not) includes 1,293 Associates. (**Exhibit 1**, ¶ 2-11; **Exhibit 2**, Coffman Decl., ¶ 21-23; Bryant Decl. ¶ 12-19).

### B.    Summary of the Key Settlement Terms.

The total settlement amount is $950,000.00.  The total settlement amount includes: (a) all individual payments to the Class Members who do not opt-out of the Settlement; (b) service award

to Representative Plaintiff; (c) Class Counsel's attorneys' fees and litigation expenses; and (d) the cost of settlement administration.  (**Exhibit 1**, ¶ 22; Coffman Decl., ¶ 24; Bryant Decl. ¶ 22).

Upon preliminary approval, the Notice of Class Action Settlement attached as **Exhibit 3** will be distributed to the Class Members providing them with an opportunity to opt out or object to the Settlement. Class Members will have 60 days to opt-out or object to the Settlement.  (**Exhibit 1**, ¶ 47; Coffman Decl., ¶ 25; Bryant Decl. ¶ 23).

Class Members that do not exclude themselves will receive individual settlement payments on a *pro rata* basis based on the number of workweeks that they worked 40 or more hours during the applicable lookback period, in comparison to the total number of workweeks in which all Class Members worked 40 or more hours during the applicable lookback periods.[1] The total settlement reflects the value of approximately 10 minutes of additional work performed each day during the applicable lookback period. The individual settlement payments after all deductions reflect the value in excess of 6 minutes of additional work performed each day applicable lookback period. For the Class Members whose calculated damages do not exceed minimum thresholds, they will receive a minimum payment as follows:  Opt-In Plaintiffs will receive a minimum payment of $10.00 and the Rule 23 Class Members will receive a minimum payment of $5.00. Importantly, the Class Members as well as future employees will receive therapeutic relief in that Defendant has revised certain policies and practices related to timekeeping that will better ensure compliance with the FLSA and Ohio's wage and hour laws. Representative Plaintiff will be paid a service award in the amount of $10,000.00. Under the terms of the Settlement, Class Counsel will be paid

---

[1] Opt-In Plaintiffs have a three-year lookback starting from the date their consent form was filed and ending on May 21, 2021, while Class Members have a two-year lookback period from the date the Complaint was filed and ending on May 21, 2021. The reason for two different lookback periods is because the OMFWSA lookback period, which applies to Class Members who are not Opt-In Plaintiffs, is two years. For the purposes of settlement only, the Parties agreed to apply the FLSA three-year lookback period to the Opt-In Plaintiffs.

one-third of the total settlement fund for their attorneys' fees and will be reimbursed for their litigation expenses. Lastly, the cost of settlement administration – which is estimated to be $14,789.00 will be paid out of the total settlement amount. Given the substantial monetary relief recovered on behalf of the Class Members and additional changes in policies and practices, the requests to pay the Service Award, Class Counsel's fees and litigation expenses, and cost of settlement administration are all reasonable as more fully explained below. (**Exhibit 1**, ¶ 46; Coffman Decl., ¶ 24-29; Bryant Decl. ¶ 21-27).

### III.  PRELIMINARY APPROVAL IS APPROPRIATE IN THIS CASE.

The Settlement is subject to approval by the Court pursuant to Fed. R. Civ. P. 23. Courts in the Sixth Circuit use a three-step process for approving class action settlements. *Bailey v. Verso Corp.*, 2021 U.S. Dist. LEXIS 31807, at * 6-7 (S.D. Ohio Feb. 22, 2021). The first step requires the court to preliminarily approve the class action settlement. *Id.* The second step requires that notice of the class action settlement be issued to the proposed settlement class members. The third step requires the court to holding a fairness hearing and decide whether to grant final approval of the class action settlement. *Id.* Currently, the Parties request that the Court preliminarily approve the Settlement under step one.

At step one, the Court must ensure that the proposed settlement class outlined in the Settlement satisfies the certification requirements of Rule 23(a) and (b)(3).[2] Then, the Court must ensure that the Settlement meets the requirements of Rule 23(e). Lastly, the Court must ensure that settlement distributions are fair, reasonable and adequate. As discussed below, these requirements are met here.

---

[2] When the prerequisites of Rule 23(a) are satisfied, an action may be maintained as a class action when it qualifies under any of the three conditions set forth in Rule 23(b). The Parties are requesting that the Court certify the proposed settlement class under Rule 23(b)(3).

A. **The Proposed Settlement Class Satisfies the Certification Requirements of Rule 23(a).**

In the Settlement, the Parties have agreed to the certification of the proposed settlement class:

> All nonexempt associates at BMW Financial Services' office in Hilliard, Ohio during the period of May 5, 2018 to May 21, 2021, who were required to boot up their computers, log into Citrix and have the toolbar open prior to the scheduled start of their shifts and who worked 40 or more hours in one or more workweeks.

In total, the proposed settlement class (including Representative Plaintiff and all Opt-In Plaintiffs) includes 1,293 individuals.  (**Exhibit 1**, ¶ 6; Coffman Decl., ¶ 16; Bryant Decl., ¶ 19).

Under Rule 23, a class action may be maintained if the following requirements of Rule 23(a) are met:  numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a).   All four elements are satisfied here.

1. **The numerosity requirement of Rule 23(a)(1) is met.**

Rule 23(a)(1)'s numerosity requirement is met if the class is "so numerous that joinder of all members is impracticable." *Swigart v. Fifth Third Bank*, 288 F.R.D. 177, 182 (S.D. Ohio 2012) (internal quotations omitted).  This requirement is met upon a showing that joinder would be difficult and inconvenient. *Id.*  Numerosity is easily satisfied here because the proposed settlement class includes 1,293 individuals.  *See e.g. Taylor v. CSX Transp., Inc.*, 264 F.R.D. 281, 288 (N.D. Ohio 2007) (generally accepted that class of 40 or more is sufficient to meet the numerosity requirement).

2. **The commonality requirement of Rule 23(a)(2) is met.**

Commonality under Rule 23(a)(2) "is satisfied when the legal question linking the class members is substantially related to the resolution of the litigation." *Swigart*, 288 F.R.D. at 183,

(*citing DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995)).  "The commonality test is qualitative rather than quantitative, that is, there need be only a single issue common to all members of the class." *In re Am. Med. Sys.*, 75 F.3d 1069, 1083 (6th Cir. 1996) (internal quotations and citation omitted).

In this case, the legal issue that links the Class Members – whether they were unlawfully denied overtime compensation as a result of Defendant's alleged policy or practice of requiring them to boot up, log into Citrix and have the toolbar open prior to the schedule start of their shifts – is undoubtedly "substantially related to the resolution of the litigation." Accordingly, the commonality requirement is met.

### 3. The typicality requirement of Rule 23(a)(3) is met.

The typicality requirement under Rule 23(a)(3) is satisfied when claims of the proposed class representative are typical of the claims of the class. *Swigart*, 288 F.R.D. at 185 (internal quotations omitted). Commonality and typicality "are separate and distinct requirements" but "tend to merge" and "are often discussed together." *Id.* (quoting *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 157 n.13 (1982)). "A proposed class representative's claim is typical if it 'arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and the claims are based on the same legal theory.'" *Swigart*, 288 F.R.D. at 185 (quoting *Little Caesar Enters., Inc. v. Smith*, 172 F.R.D. 236, 243 (E.D. Mich. 1997)). The Sixth Circuit has described the typicality requirement in the following manner: "as goes the claim of the named plaintiff, so go the claims of the class." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998).

Here, typicality exists because Representative Plaintiff's and the Class Members' claims arise out of Defendant's same course of conduct – it's failure to pay Representative Plaintiff and

the Class Members overtime compensation based on its alleged policy or practice of requiring them to boot up computer systems, log into Citrix and have the toolbar open each day prior to their schedule shift.

### 4. The adequacy of representation requirement of Rule 23(a)(4) is met.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This results in a two-pronged inquiry: "(1) the representatives must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Swigart*, 288 F.R.D. at 185-86 (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976)). In other words, "Rule 23(a)(4) tests the experience and ability of counsel for plaintiffs and whether there is any antagonism between the interests of the plaintiffs and other members of the class they seek to represent." *Swigart*, 288 F.R.D. at 186 (quoting *Cross v. Nat'l Trust Life Ins. Co.*, 553 F.2d 1026, 1031 (6th Cir. 1977)).

Both prongs of Rule 23(a)(4)'s adequacy requirement are satisfied. First, as explained above, Representative Plaintiff's claims against Defendant are based on the same alleged unlawful policies and practices that affect the Class Members. Representative Plaintiff is seeking the same relief as would the Class Members – unpaid overtime compensation. Thus, Representative Plaintiff's interests are aligned with those of the Class Members. Moreover, Representative Plaintiff is willing and able to fulfill his duties as the class representative. He has been actively involved in the prosecution of this case and was instrumental in the Parties reaching the Settlement by both attending the full day mediation and continuing to engage with Class Counsel in the months that followed. (**Exhibit 2**, Coffman Decl., ¶ 22-23; Bryant Decl., ¶ 35).

Second, Class Counsel is qualified and able to conduct this litigation on behalf of the proposed settlement class.  Collectively, Class Counsel has litigated over 100 wage and hour cases in federal courts around the country.  (**Exhibit 2**, Coffman Decl., ¶ 9; Bryant Decl., ¶ 8).  Class Counsel has actively and vigorously pursued the claims in this case.  Class Counsel has committed, and will continue to commit, the resources necessary to seeing this case to its conclusion.

## B. The Proposed Settlement Class Satisfies the Requirements of Rule 23(b)(3).

Rule 23(b)(3) requires that "questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  Thus, Rule 23(b)(3) contains two requirements: predominance and superiority.

### 1. The predominance requirement of 23(b)(3) is met.

The predominance requirement examines "whether the proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  Put differently, the predominance requirements is about whether class-wide questions are "at the heart of the litigation."  *Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007).

In this case, the proposed settlement class satisfies the Rule 23(b)(3) predominance requirement because all of the Class Members share a common set of core, predominant alleged facts and legal issues, including, (a) whether Defendant required the Class Members to boot up certain computer systems, log into Citrix and have the toolbar open prior to their schedule shift without compensation; (b) whether Representative Plaintiff and the Class Members worked overtime and how much overtime they worked; (c) whether Defendant was aware that the Class

Members worked overtime; and (d) whether Representative Plaintiff and the Class Members were denied overtime compensation as alleged in the Action.

### 2. The superiority requirement of Rule 23(b)(3) is met.

The superiority requirement examines whether a class action is superior to other available methods for the fair and efficient adjudication of the dispute and lists four factors for courts to consider: (1) the interests of the members of the class in individually controlling the prosecution of separate actions; (2) the extent and nature of other pending litigation about the controversy by members of the class; (3) the desirability of concentrating the litigation in a particular forum; and (4) the difficulties likely to be encountered in management of the class action. Fed. R. Civ. P. 23(b)(3). Each factor weighs in favor of certification.

First, there is no evidence that the proposed settlement class members have any interest in maintaining this litigation in separate actions. Second, the Parties are not aware of other pending litigation against Defendant involving the proposed settlement class members. Third, the benefits of concentrating the claims in this court through the class action mechanism are evident because Defendant consents to the Court's jurisdiction, and many, if not all, of Defendant's witnesses are located in this district. Finally, the manageability factor is automatically satisfied when a case is being certified for settlement purposes. *See Amchem Prods.*, 521 U.S. at 620.

Moreover, efficiency favors concentrating the claims in this Court. A final resolution of Defendant's liability is also fair because the case deals with policies affecting large numbers of employees. It avoids competing decisions on the issues and offers finality. There is no device that can resolve these matters as efficiently and fairly as a class action. Finally, no major difficulty is likely to arise in management of the class action. Class certification here promotes consistent results, giving Defendant "the benefit of finality and repose." *Id.* (internal citations omitted).

Adjudicating this matter as a class action is the most efficient and fair manner of resolving these claims.

**C.**      **The Notice of Class Action Settlement Meets the Requirements of Rule 23(e) and Due Process.**

Rule 23(e) requires the Court to "direct notice in a reasonable manner to all class members who would be bound" by the settlement. *Bailey v. White*, 320 Fed. Appx. 364, 2009 WL 928595 (6th Cir. 2009). The notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *UAW v. General Motors Corp.,* 497 F.3d 615, 626 (citing *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950)).

Reasonable notice to class members is also required by due process. *Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008) (citing *DeJulius v. New England Health Care Employees Pension Fund,* 429 F.3d 935, 943-44 (10th Cir. 2005) (citing *Mullane,* 339 U.S. at 313; *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 173 (1974))). To comport with the requirements of due process, notice must be "reasonably calculated to reach interested parties." *Fidel*, 534 F.3d at 514 (6th Cir. 2008) (quoting *Karkoukli's, Inc. v. Dohany*, 409 F.3d 279, 283 (6th Cir. 2005). Due process "does not, however, require *actual* notice to each party intended to be bound by the adjudication of a representative action." *Id*. (emphasis by the court) (citing *DeJulius,* 429 F.3d at 944 (citing *Mullane,* 339 U.S. at 313-14; *In re Integra Realty Res., Inc.,* 262 F.3d 1089, 1110-11 (10th Cir. 2001); *Silber v. Mabon,* 18 F.3d 1449, 1453-54 (9th Cir. 1994))). The issue is not whether all class members received notice, "but whether the class as a whole had notice adequate to flush out whatever objections might reasonably be raised to the settlement." *Fidel*, 534 F.3d at 514 (quoting *Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1375 (9th Cir. 1993)).

The "individual notice" requirement of Rule 23 and due process is fulfilled by sending written notice to class members by first-class mail at the addresses shown in the defendant's business records.  *Grunin v. International House of Pancakes* (8th Cir. 1975), 513 F.2d 114, 120, *cert. denied*, 423 U.S. 864 (1975) (citing *Eisen*, 417 U.S. at 172-77).

In this case, the Notice of Class Action Settlement will be sent to the Class Members by first-class mail using the addresses shown in company records unless another address was provided by any Opt-In Plaintiff or is otherwise discovered during the National Change of Address search.

**D.      The Settlement is Fair, Reasonable and Adequate under Rule 23(e).**

Under Rule 23(e), a class settlement must be "fair, reasonable, and adequate" under the seven-factor standard discussed below.  *UAW,* 497 F.3d at 626 (citing *Granada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205 (6th Cir. 1992); *Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir. 1983)).  The Sixth Circuit has recognized that "the law generally favors and encourages the settlement of class actions."  *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981). Such actions, by their nature, involve uncertainties of outcome, difficulties of proof, and lengthy litigation, and lend themselves readily to compromise.  4 Newberg On Class Actions § 11.41 (4th ed. 2007) (citing cases).  Therefore, when considering the below factors, the courts apply a "strong presumption" in favor of finding a settlement to be fair.  *Dail v. George A. Arab, Inc.,* 391 F. Supp. 2d 1142, 1145-46 (M.D. Fla. 2005) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). *Accord, Sweet v. General Tire & Rubber Co.*, 1982 WL 278, *5 (N.D. Ohio Mar. 17, 1982).

The seven factors used by the Sixth Circuit to evaluate class action settlements are as follows:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the

opinions of class counsel and class representatives; (6) the reaction
of absent class members; and (7) the public interest.

*UAW*, 497 F.3d at 626 (6th Cir. 2007) (citing *Granada Invs., Inc.*, 962 F.2d at 1205 (6th Cir.1992);

*Williams*, 720 F.2d at 922-23 (6th Cir.1983)), quoted in *Crawford*, 2008 WL 4724499 at *3.  In

considering these factors, the task of the court "is not to decide whether one side is right or even

whether one side has the better of these arguments. . . .The question rather is whether the parties

are using settlement to resolve a legitimate legal and factual disagreement." *UAW*, 497 F.3d at 632.

As discussed below, each of these factors supports preliminary approval here.

### 1.    No indicia of fraud or collision exists.

There was no fraud or collusion in reaching the Settlement.  "Courts presume the absence

of fraud or collusion unless there is evidence to the contrary." *White v. Premier Pallet & Recycling,*

*Inc.*, No. 5:18-cv-1460, 2018 U.S. Dist. LEXIS 174414, at *4 (N.D. Ohio Oct. 10, 2018) (citation

omitted).  All settlement negotiations were extensive, conducted fairly, and at arm's-length, and

only occurred after the exchange and rigorous analysis of the relevant case law, pay and time data,

and exhaustion of the Parties' legal and factual positions.  (Coffman Decl., ¶ 21; Bryant Decl., ¶

29); *see Mangone v. First USA Bank*, 206 F.R.D. 222, 226 (S.D. Ill. 2001) (arm's-length

negotiations conducted by competent counsel constitute prima facie evidence of fair settlements).

Both Parties' Counsel, who are experienced in wage and hour class and collective actions, support

the settlement as fair and reasonable, and all certify that it was reached at arm's-length. (Coffman

Decl., ¶ 31; Bryant Decl., ¶ 27-9)

### 2.    The complexity, expense and likely duration of continued litigation favor approval.

The policy favoring the settlement of class actions and other complex cases applies with

particular force here.  Wage and hour class and collective actions are inherently complex,

expensive, and time-consuming.  *See, Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-CV-

516, 2019 WL 6310376, at *3 (S.D. Ohio Nov. 25, 2019); *Satterly v. Airstream, Inc*., No. 3:19-cv-32, 2020 U.S. Dist. LEXIS 210868, at *15, 2020 WL 6536342 (S.D. Ohio Sep. 25, 2020) ("From the outset, the Court notes that wage and hour class and collective actions, such as this one, are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them."); *Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 U.S. Dist. LEXIS 140019, at *8 (S.D. Ohio Aug. 17, 2018) ("[m]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them") (citations omitted).

If forced to litigate this case further, the Parties would certainly engage in complex, costly and protracted litigation. The Settlement, on the other hand, provides substantial relief to Representative Plaintiff and the Class Members promptly and efficiently, and amplifies the benefits of that relief through the economies of class resolution.  (Coffman Decl., ¶ 32-35, 47; Bryant Decl., ¶ 28, 32, 43, and 45).

### 3.    Investigation was sufficient to allow the Parties to act intelligently.

To confirm that the Representative Plaintiff and the Class Members "have had access to sufficient information to evaluate their case and to assess the adequacy of the proposed Settlement," the Court must consider the amount of discovery engaged in by the parties. *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 374 (S.D. Ohio 2006) (Watson, J.); *Satterly*, 2020 U.S. Dist. LEXIS 210868at *15–16. "In considering whether there has been sufficient discovery to permit the plaintiffs to make an informed evaluation of the merits of a possible settlement, the court should take account not only of court-refereed discovery but also informal discovery in which parties engaged both before and after litigation commenced." *Satterly,* 2020 U.S. Dist. LEXIS 210868 at *16 (internal citations omitted). In this consideration, "the absence of formal

discovery is not unusual or problematic, so long as the parties and the court have adequate information in order to evaluate the relative positions of the parties." *Id.* (internal citations omitted)*; Mitchell v. Indep. Home Care, Inc.,* No. 2:17-cv-717, 2019 U.S. Dist. LEXIS 26464, at *10–11, 2019 WL 696941 (S.D. Ohio Feb. 20, 2019) (Vascura, M.J.) (internal citations omitted), *report and recommendation adopted*, No. 2:17-cv-717, 2019 U.S. Dist. LEXIS 39104 (S.D. Ohio Mar. 12, 2019) (Watson, J.); *see also Dillow v. Home Care Network, Inc.*, No. 1:16-cv-612, 2018 U.S. Dist. LEXIS 170579, at *8, 2018 WL 4776977 (S.D. Ohio Oct. 3, 2018) (stating that while the parties had not reached conducting depositions, that "in a wage and hour case based primarily on payroll records, this is sufficient for the parties to properly evaluate their risks and fairly settle the claims").

The Parties engaged in substantial investigation prior to negotiating the Settlement Agreement. Defendant obtained and produced the payroll and other wage data required for the Parties to construct a damages model, retain an MA level Economist to provide a damages calculation for the Class Members, and engage in extensive back and forth calculations between counsel for the Parties. In addition, the legal issues in this case were thoroughly researched and debated by the Parties.  (**Exhibit 2**, Coffman Decl., ¶ 21; Bryant Decl., ¶ 19).

### 4. The risks of litigation and uncertainty of recovery favor approval.

Counsel for both sides believe in the merits of their clients' positions, but nonetheless recognize that litigation of these types of claims is uncertain in terms of duration, cost, and result. Moreover, in the present case, Defendant raised affirmative defenses to the claims, and maintains that the Class Members are not entitled to any overtime compensation: the outcome of those defenses is uncertain as well. Continued litigation would be risky for all.

The possible recovery is also open to dispute. Even if Representative Plaintiff proves liability, the amount of recovery is uncertain and something upon which the Parties continue to disagree.  (**Exhibit 2**, Coffman Decl., ¶ 43-47; Bryant Decl., ¶ 41-43)

> **5.** **Experienced counsel's views favor approval.**

The recommendation of Class Counsel, skilled in class actions, that the Court should approve the Settlement is entitled to deference. *Satterly*, 2020 U.S. Dist. LEXIS 210868, at *19–20; *see also Williams*, 720 F.2d at 922–23 (6th Cir. 1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs. . . . [T]he deference afforded counsel should correspond to the amount of discovery completed and the character of the evidence uncovered."); *Kritzer v. Safelite Solutions, LLC*, No. 2:10-cv-0729, 2012 U.S. Dist. LEXIS 74994, at *23, 2012 WL 1945144 (S.D. Ohio May 30, 2012) ("The Court gives weight to the belief of experienced counsel that a settlement is in the best interests of the class.").

The Parties' Counsel are experienced in wage-and-hour class actions, have acted in good faith, and have represented their clients' best interests in reaching the Settlement Agreement. Counsel support the Settlement Agreement as fair and reasonable, and in the best interest of the Class as a whole.  (**Exhibit 2**, Coffman Decl., ¶ 32, 42-43; Bryant Decl., ¶ 40)

> **6.** **The reaction of absent class members cannot be assessed until after notice issues.**

There has not yet been an opportunity to gauge the reaction of absent Class Members as class notice has not yet been issued. The Parties are of the opinion that this factor will likely favor approval because none of the Parties, their Counsel, nor any person on their behalf, shall seek to solicit or otherwise encourage anyone to object to the settlement, or appeal from any order of the Court that is consistent with the terms of this settlement, or discourage participation in the settlement claims process. Class Counsel, however, may advise Class Members how to assert their

right to object. However, this issue can be reexamined in the motion for final approval and certification.

### 7.    The public interest favors settlement.

Approval of a fair and reasonable settlement agreement promotes the public's interest in encouraging settlement of litigation. *Satterly*, 2020 U.S. Dist. LEXIS 210868, at \*21; *Edwards v. City of Mansfield*, No. 1:15-CV-959, 2016 U.S. Dist. LEXIS 64159, \*10 (N.D. Ohio May 16, 2016); *Crawford*, 2008 U.S. Dist. LEXIS 90070, at \*30–31 (quoting *Lynn's Food Stores, Inc.*, 679 F.2d at 1353). Indeed, the "[t]ouchstone for final approval is the effect on the class <u>as a whole</u> in light of the particular circumstances, which include the public policy encouraging comprehensive settlement of class actions and multi-party litigation." *In re Rio Hair Naturalizer Prods. Liab. Litig.*, MDL No. 1055, 1996 U.S. Dist. LEXIS 20440, at \*35 (E.D. Mich., Dec. 20, 1996) (underlining in original). Accordingly, resolving the present matter through settlement serves the public interest by providing fair and efficient payments to the settlement class members, avoiding the continued expenditure of judicial resources on protracted complex litigation, and eliminating the risks that both parties face through the litigation process.

### E.    <u>The Settlement Distributions Are Fair, Reasonable and Adequate.</u>

As a part of the scrutiny it applies to a wage and hour settlement, "a court must ensure that the distribution of the settlement proceeds is equitable." *Murton v. Measurecomp, LLC*, No. 1:07-CV-3127, 2009 U.S. Dist. LEXIS 144222, at \*22 (N.D. Ohio Aug. 10, 2009).  In the present case, the Settlement provides that the total settlement amount will be distributed as follows:  (a) individual payments to the Class Members who do not opt-out of the Settlement; (b) service award to Representative Plaintiff; (c) Class Counsel's attorneys' fees and litigation expenses; and (d) the cost of settlement administration.

As discussed below, all components of the proposed distribution are proper and reasonable, and the Settlement as a whole is fair, reasonable and adequate for Representative Plaintiff and the Class Members.

### 1.     The individual payments are reasonable and adequate.

Class Members who do not exclude themselves will receive individual settlement payments on a *pro rata* basis based on the number of workweeks that they worked 40 or more hours during the applicable lookback period, in comparison to the total number of workweeks in which all Class Members worked 40 or more hours during the applicable lookback period. The total settlement reflects the value of approximately 10 minutes of additional work performed each day during the applicable lookback period. The individual settlement payments after all deductions reflect the value in excess of 6 minutes of additional work performed each day applicable lookback period. For the Class Members whose calculated damages do not exceed minimum thresholds, they will receive a minimum payment as follows:  Opt-In Plaintiffs will receive a minimum payment of $10.00 and the Rule 23 Class Members will receive a minimum payment of $5.00. Importantly, the Class Members as well as future employees of Defendant will receive therapeutic relief in that Defendant has further revised certain policies and practices related to timekeeping that will better ensure compliance with the FLSA and Ohio's wage and hour laws. (Coffman Decl., ¶¶ 42-45; Bryant Decl., ¶ 24-25).

In short, if approved by the Court, the Settlement will provide substantial payments to Representative Plaintiff and the Class Members for unpaid overtime compensation. As explained above and in the Declarations of Class Counsel, the Settlement provides such individual settlement payments even though Defendant contends that the Class Members were not entitled to *any* compensation because Class Members, who keep their own time records, are instructed to report

all work time, they were not required to boot up their computer systems, log into Citrix and have the toolbar open prior to the start of compensable time and, if they did so without reporting their work time, Defendant disputes the amount of time to complete the tasks and contends that the amount of time was de minimis. These factors combined with the therapeutic relief[3] further confirm Class Counsel's opinion that the settlement is fair and reasonable and the payments to Representative Plaintiff and the Class Members is not only adequate, but exceptional.

### 2. The service award is proper and reasonable.

The Settlement provides for a service award of $10,000 to Representative Plaintiff. Courts routinely approve service awards in class and collective action litigation, because service awards "are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003). Service awards are meant to "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446, at *17 (N.D. Ohio Mar. 8, 2010).

In this Circuit, service awards are "typically justified where the named plaintiffs expend time and effort beyond that of the other class members in assisting class counsel with the litigation, such as by actively reviewing the case and advising counsel in the prosecution of the case." *In re S. Ohio Corr. Facility*, 175 F.R.D. 270, 273 (S.D. Ohio 1997). Courts recognize that "differentiation among class representatives based upon the role each played may be proper in given circumstances." *Dun & Bradstreet*, 130 F.R.D. at 374; *see also Enter. Energy Corp. v. Columbia Gas Transmission Corp.*,

---

[3] *See Funk v. Airstream, Inc.*, 2019 WL 4599816, at *7 (S.D. Ohio Sep. 23, 2019) (Rice, J.) (when noting the value of the benefit rendered by counsel to the putative class members, it held that the change in pay policy/practice with respect to compliance with wage and hour laws was important).

137 F.R.D. 240, 250 (S.D. Ohio 1991) (among the factors warranting incentive awards are the "time and effort spent" by the individuals in question and "whether these actions resulted in a substantial benefit to Class Members").

The proposed service award set forth in the Agreement is within the range awarded by district courts in this Circuit and in wage and hour actions in other jurisdictions. *See Satterly*, 2020 U.S. Dist. LEXIS 210868, at *25–26 (awarding the representative plaintiffs payments in various amounts from $2,500 to $15,000); *Al-Sabur, et al. v. ADS Alliance Data Systems, Inc.*, No. 2:18-cv-957, ECF No. 23 (S.D. Ohio Aug. 6, 2019) (Smith, J.) (approving service awards of $12,500 for a representative plaintiff and $2,500 for an Opt-In Plaintiff); *Mullins v. S. Ohio Pizza, Inc.*, No. 1:17-CV-426, 2019 U.S. Dist. 11019, at *16–17, 2019 WL 275711 (S.D. Ohio Jan. 18, 2019) (Dlott, J.) ($10,000 service award for each named plaintiff); *Brandenburg*, 2019 U.S. Dist. LEXIS 204371, at *21–22, 2019 WL 6310376 (S.D. Ohio Nov. 25, 2019) (Rice, J.) ($10,000 service award for each named plaintiff); *Arledge v. Domino's Pizza, Inc.*, No. 3:16-CV-386-WHR, 2018 U.S. Dist. LEXIS 179474, at *17, 2018 WL 5023950 (S.D. Ohio Oct. 17, 2018) (Rice, J.) ($10,000 service award for each named plaintiff); *Swigart v. Fifth Third Bank*, No. 1:11-cv-88, 2014 U.S. Dist. LEXIS 94450, at *20, 2014 WL 3447947 (S.D. Ohio July 11, 2014) (approving "modest class representative award" requests of $10,000 to each of the class representatives in FLSA/Rule 23 hybrid action); *In re Polyurethane Foam Antitrust Litig.*, 135 F. Supp. 3d 679, 694 (N.D. Ohio 2015) (awarding $35,000 service awards); *Johnson v. Midwest Logistics Sys.*, No. 2:11-CV-1061, 2013 U.S. Dist. LEXIS 74201, at *20, 2013 WL 2295880 (S.D. Ohio May 25, 2013) (awarding $12,500 service award).

Representative Plaintiff was a longtime employee of Defendant whose damages extend well beyond the possible lookback period under the FLSA. Moreover, he spent significant time assisting

Class Counsel in their investigation and prosecution of this case. Furthermore, Representative Plaintiff attended a full day mediation and continued to work closely with Class Counsel even after the mediation was unsuccessful to bring this dispute to a resolution. In addition, Representative Plaintiff attached his named to a publicly filed lawsuit against his former employer. *Satterly*, 2020 WL 6536342, at *9 (citing *Osman*, 2018 U.S. Dist. LEXIS 78222, at *5 and *Sand v. Greenberg*, 2011 U.S. Dist. LEXIS 155013, at *9, 2011 WL 784602 (S.D.N.Y. Oct. 6, 2011) (approving award in FLSA case because plaintiffs "took risks by putting their names on this lawsuit," including that of "blacklisting"). As such, the time and efforts Representative Plaintiff provided supports the requested service award. (Coffman Decl., ¶ 37; Bryant Decl., ¶ 35)

### 3. The attorneys' fees and expenses to Class Counsel are proper and reasonable.

After the Court has confirmed that the terms of Settlement are fair to the Class Members, it may review the Agreement as to the provision of attorneys' fees and litigation expenses to Class Counsel. The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). In *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994), *cert. denied*, 513 U.S. 875 (1994), the Sixth Circuit held that the FLSA's mandatory attorney fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley*, 19 F.3d at 1134 (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G&M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 (6th Cir.1984)).

In this case, the Settlement provides that Class Counsel receive one-third of the total settlement amount as payment for their attorneys' fees. A one-third fee is "typical for attorney's

fees in a common fund" for wage and hour litigation in this District. *Hebert v. Chesapeake Operating, Inc.*, 2019 WL 4574509, at *4-8 (S.D. Ohio Sept. 20, 2019).  In fact, in common fund cases, the "percentage approach is 'the most appropriate method for determining reasonable attorneys' fees' in wage and hour cases." *Id.* at *4 quoting *Swigart v. Fifth Third Bank*, 2014 WL 3447947, at *5 (S.D. Ohio July 11, 2014)). This "is a normal fee amount in a wage and hour case." *Brandenburg*, 2019 WL 6310376, *5 (S.D. Ohio Nov. 25, 2019) (citing *Carr v. Bob Evans Farms, Inc.*, No. l:17-cv-1875, 2018 WL 5023950 at *4 (N.D. Ohio July 27, 2018)); *Estate of McConnell v. EUBA Corp.*, No. 3:18-cv-355, 2021 WL 1966062, *5-7 (S.D. Ohio May 17, 2021).

"Absent compelling reasons to the contrary," courts apply the percentage method in wage and hour common fund cases, "as it best reflects FLSA's employee-protection objective." *Dewald v. Time Warner Cable Inc.*, No. 16-cv-1129, 2021 WL 687246 at *5 (S.D. Ohio Feb. 16, 2021). "[T]he percentage approach encourages efficiency, judicial economy, and aligns the interests of the lawyers with the class[]." *In re Cardinal Health Inc. Sec. Litigations.*, 528 F.Supp.2d 752, 762 (S.D. Ohio 2007). "[W]hile the lodestar approach incentivizes attorneys to work more hours, without regard to the quality of the output or the class's needs, the percentage approach instead 'rewards counsel for success and penalizes it for failure.'" *Id.* Thus, the percentage method is preferred. *Arp. v. Hohla & Wyss Enterprises, LLC*, 2020 WL 6498956 at *6 (S.D. Ohio Nov. 5, 2020); *Rikos v. Proctor & Gamble Co.*, No. 1:11-cv-226, 2018 U.S. Dist. LEXIS 72722, at *22, 2018 WL 2009681 (S.D. Ohio Apr. 30, 2018) (Black, J.) (internal citations omitted); *Feiertag v. DDP Holdings, LLC*, No. 14-cv-2643, 2016 U.S. Dist. LEXIS 122297, at *20–21, 2016 WL 4271208 (S.D. Ohio Sep. 9, 2016); *Dillow v. Home Care Network, Inc.*, No. 1:16-cv-612, 2018 U.S. Dist. LEXIS 170579, at *16, 2018 WL 4776977 (S.D. Ohio Oct. 3, 2018); *Carr v. Bob Evans Farms*, No. 1:17-CV-1875, 2018 U.S. Dist. LEXIS 228221, at *10-11 (N.D. Ohio July 27, 2018);

*see also, Osman v. Grube, Inc.*, No. 3:16-cv-00802, 2018 U.S. Dist. LEXIS 78222, at *6 (N.D. Ohio May 4, 2018) ("One-third of the common fund is a reasonable attorneys' fee award 'and has been approved in similar FLSA collective actions in this judicial district.'") (citation omitted).

Class Counsel accepted this case on a contingent fee basis and advanced all litigation expenses. (Coffman Decl., ¶ 36, 49; Bryant Decl., ¶ 34). "In doing so, Class Counsel assumed a real risk in taking on this case, preparing to invest time, effort, and money over a period of years with no guarantee of recovery. This factor weighs in favor of approving the requested fee award." *Ganci v. MBF Insp. Servs.*, No. 2:15-cv-2959, 2019 U.S. Dist. LEXIS 207645, at *19 (S.D. Ohio Dec. 3, 2019); *see also, Barnes v. Winking Lizard, Inc.*, No. 1:18CV952, 2019 U.S. Dist. LEXIS 65657, at *15 (N.D. Ohio Mar. 26, 2019) ("Class Counsel provided representation on a purely contingency fee basis, advancing all litigation costs and receiving no payment unless [and] until there was a recovery, and should be compensated for that risk").

Finally, Courts in this district acknowledge that "[w]age-and-hour collective and class actions are, by their very nature, complicated and time-consuming." *Barnes v. Winking Lizard, Inc.*, No. 1:18CV952, 2019 U.S. Dist. LEXIS 65657, at *16 (N.D. Ohio Mar. 26, 2019). Given the inherent complexity of a wage and hour collective action and the disputed issues of fact and law in this case, an award of one-third of total settlement amount appropriately compensates Class Counsel for their prosecution of this case, and advances the public's interests in rewarding attorneys who bring wage and hour cases. *See, e.g., Gentrup v. Renovo Servs., LLC*, No. 1:07CV430, 2011 U.S. Dist. LEXIS 67887, at *14 (S.D. Ohio June 24, 2011) ("society has a stake in rewarding the efforts of the attorneys who bring wage and hour cases, as these are frequently complex matters.").

The Agreement also provides that Class Counsel will be reimbursed their out-of-pocket expenses. "Under the common fund doctrine, Class Counsel is entitled to reimbursement of all reasonable out-of-pocket expenses and costs incurred in the prosecution of claims and in obtaining settlement." *Brandenburg*, 2019 U.S. Dist. LEXIS 204371, at *20 (S.D. Ohio Nov. 25, 2019). In fact, "[e]xpense awards are customary when litigants have created a common settlement fund for the benefit of a class." *Id.*

In the prosecution of this case, Class Counsel incurred out-of-pocket expenses in the amount of $15,122.79. (Coffman Decl., ¶ 28, 38, 53; Bryant Decl., ¶ 26, 51) Because these expenses are reasonable and were incurred in the prosecution of the claims in this case, the Court should preliminarily award Class Counsel reimbursement of these costs and expenses from the settlement fund. Finally, the Court should preliminarily approve payment from the fund to Analytics Consulting, LLC in the amount of $14,789.00 for settlement administration costs.[4] (Coffman Decl., ¶ 36; Bryant Decl., ¶ 27, 37).

On the basis of these factors, as well as all of the other factors discussed above, the Court should conclude that the Settlement is fair, reasonable, and adequate, and grant preliminary and approval under Rule 23(e).

---

[4] Analytics Consulting specializes in class action settlements and legal notice campaigns. Class Counsel has worked extensively with Analytics Consulting on class and collective action notice and settlement administration, and Analytics Consulting has been approved as settlement administrator in cases across the country. *See, e.g., Karpik v. Huntington Bancshares Inc.*, No. 2:17-cv-1153, 2021 U.S. Dist. LEXIS 38641, at *11 (S.D. Ohio Feb. 18, 2021) ("the Court appointed Analytics Consulting, LLC ("Analytics") to serve as the Settlement Administrator, with responsibility to distribute the Notices and carry out the other administrative duties specified by the Settlement Agreement"); *Watson v. Tennant Co.*, No. 2:18-cv-02462 WBS DB, 2020 U.S. Dist. LEXIS 48918, at *21 (E.D. Cal. Mar. 19, 2020) ("Analytics Consulting, LLC, is appointed as the settlement administrator"); *Surdu v. Madison Glob., LLC*, 2018 U.S. Dist. LEXIS 48356, at *18 (S.D.N.Y. Mar. 23, 2018) ("I confirm Analytics Consulting, Inc. as the claims administrator").

## IV.    CONCLUSION

Representative Plaintiff and Defendant respectfully request that the Court enter the

Proposed Preliminary Order Approving Class Action Settlement Agreement attached as **Exhibit**

**3** and:

- Certify the following class under Rule 23:  "All nonexempt associates at BMW Financial Services' office in Hilliard, Ohio during the period of May 5, 2018 to May 21, 2021, who were required to boot up their computers, log into Citrix and have the toolbar open prior to the scheduled start of their shifts and who worked 40 or more hours in one or more workweeks;

- Preliminarily approve the Settlement pursuant to Fed. R. Civ. P. 23;

- Designate Representative Plaintiff as the Class Representative;

- Preliminarily approve the Service Award to Representative Plaintiff;

- Designate Matthew J.P. Coffman of Coffman Legal, LLC and Daniel I. Bryant of Bryant Legal, LLC as Class Counsel;

- Preliminarily approve Class Counsel's request for attorneys' fees and litigation expenses; and

- Schedule a Fairness Hearing approximately 120 days after preliminary approval.

Respectfully submitted,

_s/ Matthew J.P. Coffman_
Matthew J.P. Coffman (0085586)
**COFFMAN LEGAL, LLC**
1550 Old Henderson Rd.
Suite 126
Columbus, OH 43220
Phone: 614-949-1181
Fax: 614-386-9964
Email: mcoffman@mcoffmanlegal.com

_s/ Daniel I. Bryant_
Daniel I. Bryant (0090859)
**BRYANT LEGAL, LLC**
1550 Old Henderson Rd.
Suite 126
Columbus, OH 43220

_s/ Ann E. Knuth_
Steven E. Seasly (0070536)
Ann E. Knuth (0061566)
**HAHN LOESER & PARKS LLP**
200 Public Sq., Ste. 2800
Cleveland, Ohio 44114
Phone: (216) 621-0150
Fax: (216) 241-2824
Email: sseasly@hahnlaw.com
            aknuth@hahnlaw.com

Marc J. Kessler, Trial Attorney (0059236)
**HAHN LOESER & PARKS LLP**
65 E. State St., Ste. 1400
Columbus, Ohio 43215
Phone: (614) 233-5168

Phone: (614) 704-0546
Fax: (614) 573-9826
Email: dbryant@bryantlegalllc.com

*Attorneys for Plaintiff*

Fax: (614) 221-5909
Email: mkessler@hahnlaw.com

*Attorneys for Defendant*
*BMW Financial Services NA, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 11, 2022, the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

<u>*s/ Daniel I. Bryant*</u>
Daniel I. Bryant (0090859)
*Counsel for Plaintiff*